UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK TRUST, N.A., )<br>as Trustee for LSF9 Master )<br>Participation Trust, )<br> )<br>      Plaintiff )<br> )<br>v. )<br> )<br>MICHELE LEO, )<br> )<br>      Defendant ) | No. 2:23-cv-00459-NT |

## RECOMMENDED DECISION

In this foreclosure action, Michele Leo moves for judgment on the pleadings, arguing that U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust, has failed to state a claim. *See* Motion for Judgment (ECF No. 11). U.S. Bank Trust opposes the motion and moves for the appointment of a receiver and for the subject property's rent proceeds to be held in escrow. *See* Receiver Motion (ECF No. 9); Escrow Motion (ECF No. 23). For the reasons that follow, I recommend that the Court deny Leo's motion for judgment on the pleadings, grant U.S. Bank Trust's motion to appoint a receiver, and deny as moot U.S. Bank Trust's motion to hold rent proceeds in escrow.

### I. Background

In 2007, Leo executed a promissory note in the amount of $380,000 in favor of Evest Lending, Inc., which was secured by a mortgage on her real property located at 45 Smutty Lane in Saco (the "property"). *See* Complaint (ECF No. 1) ¶¶ 6-9. The note was later assigned to OneWest Bank, FSB. *See id.* ¶ 10.

1

Leo filed for Chapter 11 bankruptcy in 2013. *Id.* ¶ 14. Under the terms of her Chapter 11 plan, Leo agreed to surrender the property to the OneWest Bank in exchange for discharge of her personal liability. *Id.* ¶ 15; *see* Debtor's First Amended Joint Plan of Reorganization ("Chapter 11 Plan") (ECF No. 20-2) at 14, 22 (describing the claims of One West Bank and noting that the property was "[s]urrendered in full satisfaction of all claims . . . and upon confirmation [One West Bank] shall have no claims whatsoever against the Debtors or property of their estates other than the surrendered real estate"). The Bankruptcy Court confirmed Leo's Chapter 11 plan on May 16, 2014. *See* Bankruptcy Docket (ECF No. 21-1) at 1, 25.

Thereafter, the note was assigned from OneWest Bank to Ocwen Loan Servicing, LLC, in 2017, and then from Ocwen Loan Servicing to U.S. Bank Trust later that same year. Complaint ¶¶ 11-12. In 2018, U.S. Bank Trust filed an action in state court seeking a declaratory judgment that, as holder of the note, it was also the owner of the mortgage notwithstanding assignment issues relating to Mortgage Electronic Registration Systems, Inc. *See* State Court Order (ECF No. 6-1) at 1. The state court ultimately granted Leo's motion to dismiss U.S. Bank Trust's declaratory judgment action with prejudice, concluding that while U.S. Bank Trust might have had some "equitable interest in the mortgage," it lacked sufficient ownership to compel the assignment of the mortgage. *Id.* at 5-6.[1]

---

[1] It is appropriate for this Court to consider the bankruptcy court and state court records because they are susceptible to judicial notice. *See Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (noting that courts "may consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment" (cleaned up)); *United States v. Bauzó-Santiago*, 867 F.3d 13, 23 (1st Cir. 2017) ("[C]ourts may take judicial notice of relevant court records." (cleaned up)).

In March 2023, Evest Lending—the original lender and mortgagee—executed a quitclaim assignment of its interest in the mortgage to U.S. Bank Trust. Complaint ¶ 13; *see* ECF No. 1-8. The following month, U.S. Bank Trust sent Leo a notice of default and right to cure, which listed the amount necessary to cure the default and the deadline for doing so. Complaint ¶¶ 18-19. When Leo did not cure the default before the expiration of the deadline, U.S. Bank Trust initiated the instant *in rem* foreclosure action. *Id.* ¶¶ 17, 20. Notably, Leo does not occupy the property; instead, she rents it out to tenants on a monthly basis. *Id.* ¶ 25.

## II. Leo's Motion for Judgment on the Pleadings[2]

In her motion for judgment on the pleadings, Leo argues that U.S. Bank Trust has failed to state a claim upon which relief can be granted for two separate reasons. *See* Motion for Judgment at 1. First, she argues that U.S. Bank Trust cannot prove an essential element of its foreclosure action because its notice of default and right to cure failed to comply with 14 M.R.S.A. § 6111(1-A)(B) (Westlaw). *See* Motion for Judgment at 5-11. Second, she contends that U.S. Bank Trust is barred under the doctrine of res judicata from relitigating its ownership of the mortgage—another essential element of proof in a foreclosure action—because that issue was already determined in the 2018 state court action. *See id.* at 12-16.

---

[2] A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated much like a motion to dismiss under Fed. R. Civ. P. 12(b)(6); a court must accept all the nonmovant's well-pleaded facts as true and should deny the Rule 12(c) motion if the factual allegations in the complaint raise the right to relief beyond a speculative level. *See Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).

U.S. Bank Trust challenges Leo's arguments on the merits but also more generally asserts that Leo is barred under the doctrine of judicial estoppel from opposing foreclosure because such opposition is inconsistent with her surrender of the property in her confirmed Chapter 11 bankruptcy plan. *See* Opposition to Motion for Judgment (ECF No. 20).

Judicial estoppel is an equitable doctrine the purpose of which "is to protect the integrity of the judicial process" when litigants try "to play fast and loose with the courts." *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010). Under the doctrine, a litigant is prevented "from taking a litigation position that is inconsistent with a litigation position successfully asserted by [her] in an earlier phase of the same case or in an earlier court proceeding." *Id.*

The elements of judicial estoppel are not reducible "to a scientifically precise formula," but "courts generally require the presence of three things before introducing the doctrine into a particular case." *Id.* at 8-9.

> First, a party's earlier and later positions must be clearly inconsistent. Second, the party must have succeeded in persuading a court to accept the earlier position. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court.

*Id.* at 9 (cleaned up).[3]

---

[3] "Because judicial estoppel appears neither clearly procedural nor clearly substantive, there is a potential choice of law question of whether federal or state law should govern in this diversity action." *RFF Fam. P'ship, LP v. Ross*, 814 F.3d 520, 528 n.5 (1st Cir. 2016) (cleaned up). But I need not resolve that question because there is no substantive difference between federal and Maine law in the judicial estoppel context. *Cf. In re Child of Nicholas P.*, 2019 ME 152, ¶ 16, 218 A.3d 247 ("Judicial estoppel applies when (1) the position asserted in subsequent legal action is clearly inconsistent with a previous position asserted; (2) the party in the previous action has successfully convinced the court to accept the inconsistent position; and (3) the party has gained an unfair advantage as a result of his or her change of position in the subsequent action." (cleaned up)). And in any event, the parties appear to agree on the application of federal law regarding judicial estoppel.

The first question, then, is whether Leo's surrender of the property during her bankruptcy proceedings is clearly inconsistent with her opposition to the instant foreclosure action.  Leo seemingly accepts that, in the bankruptcy context, her surrender meant that she agreed "to make the collateral available to the secured creditor"—that is, "to cede [her] possessory rights in the collateral." *In re Canning*, 706 F.3d 64, 69 (1st Cir. 2013) (quoting *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)).[4] That being the case, there is an obvious tension between Leo's agreement to make the property available to the secured creditor (now U.S. Bank Trust) to satisfy her debt and her current opposition to U.S. Bank Trust's efforts to foreclose on the property.  *See In re Holoka*, 525 B.R. 495, 496-97, 503 (Bankr. N.D. Fla. 2014) (emphasizing that "[f]ighting the secured lender's right to take title does not equate to surrendering the collateral" in a case where debtors' confirmed Chapter 11 bankruptcy plan "said they were surrendering" their property but they were nevertheless "fighting" the secured lender's *in rem* foreclosure action); *cf. In re Failla*, 838 F.3d 1170, 1178 (11th Cir. 2016) (noting that a debtor who surrenders her property during bankruptcy proceedings "is representing to the [bankruptcy court] that she will make her property available to the Bank by refraining from taking any

---

[4] Leo cited *In re Canning* for this meaning of surrender during oral argument.  I recognize that *In re Canning* pertained to Chapter 7 bankruptcy proceedings and involved a statutory subsection that is inapplicable in the Chapter 11 context.  Nevertheless, the First Circuit did not rely on a statutory definition of surrender and instead relied on the "most sensible connotation" of what it means to surrender property to a secured creditor during a bankruptcy proceeding, *In re Pratt*, 462 F.3d at 18-19 (the earlier First Circuit case quoted in *In re Canning*), so I see no reason not to accept that meaning in the context of this case.  Similarly, although Leo briefly argues that Chapter 7 cases are inapplicable in the context of this case, *see* Motion for Judgment Reply (ECF No. 21) at 6, she fails to point to any meaningful differences between surrendering a property in the Chapter 7 and Chapter 11 contexts that would alter the judicial estoppel analysis in her favor.

overt act that impedes the Bank's ability to foreclose its interest in the property" (cleaned up)).[5]

The next question is whether Leo successfully persuaded the Bankruptcy Court to accept her position regarding the surrender of her property in exchange for discharge of her personal liability. The answer to this question is an easy yes. Under the explicit terms of her Chapter 11 plan Leo's personal liability under the note was discharged upon the Bankruptcy Court's confirmation of the plan because she agreed to surrender the property to the secured creditor to satisfy its claims against her.[6] *See* Chapter 11 Plan at 22; Bankruptcy Docket at 1, 25.

That leaves the question of whether Leo would derive an unfair advantage if this Court were to grant her motion to dismiss this action despite her earlier surrender of the property before the Bankruptcy Court. The answer to this question is also easy: Leo cannot have her cake (the discharge of her personal debt based on the surrender of the property to the secured creditor in satisfaction of its claims against her) and eat it too (opposing the secured creditor's efforts to foreclose on the property). *Cf. In re Failla*, 838 F.3d at 1178 ("In bankruptcy, as in life, a person does not get to have [her] cake and eat it too. . . . Because the Faillas filed a statement of

---

[5] For the first time at oral argument, Leo noted that *Collier on Bankruptcy* has described *In re Failla* as wrongly decided. *Collier on Bankruptcy*'s disagreement with *In re Failla*, however, seemingly relates to the Eleventh Circuit's interpretation of 11 U.S.C. § 521(a) in the context of Chapter 7 cases. *See* 4 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 521.14 (16th ed. 2024). I rely on *In re Failla* more generally for the Eleventh Circuit's judicial estoppel analysis.

[6] Strangely, Leo argued for the first time at oral argument that her personal liability under the note was not actually discharged because she was obligated to make a certain number of payments before her debt was discharged. Whatever Leo was required to do for the discharge of her other debts, the explicit language of the plan was that her liability under the note at issue here would be discharged upon confirmation not upon the satisfaction of further conditions.

6

intention to surrender their house, they cannot contest the foreclosure action."); *Colon v. Bayview Loan Servicing, LLC*, No. 19-517 WES, 2020 WL 3051242, at *2-3 (D.R.I. June 8, 2020) (concluding that, where a litigant surrendered his rights to a property in an earlier bankruptcy proceeding, he was "judicially estopped from claiming that the foreclosure of his property was constitutionally and contractually defective"); *Souza v. Bank of Am. Nat'l Ass'n*, No. 1:13-cv-10181-PBS, 2013 WL 3457185, at *3 (D. Mass. July 8, 2013) ("Because Souza surrendered her home in bankruptcy, the doctrine of judicial estoppel bars her claims challenging the foreclosure process."); *Ibanez v. U.S. Bank Nat'l Ass'n*, 856 F. Supp. 2d 273, 275-76 (D. Mass. 2012) (holding that a plaintiff was judicially estopped from seeking damages from a lender relating to an alleged improper foreclosure because he surrendered the property at issue in a bankruptcy proceeding before the foreclosure took place).

Leo tries several different ways to get around judicial estoppel, none of which are successful.

First, she argues that U.S. Bank Trust "waived" its opportunity to foreclose because her bankruptcy case was closed in 2014 and "all property of the bankruptcy estate that was not liquidated by the trustee" was returned to her under 11 U.S.C. § 554(c). Motion for Judgment Reply at 6. This argument founders because she surrendered the property *out* of the bankruptcy estate *to* the secured creditor, so section 554(c) is inapplicable.

7

Next, Leo argued at oral argument that U.S. Bank Trust was required under 11 U.S.C. §§ 347(b) and 1143 to foreclose within five years of the Bankruptcy Court's confirmation of her Chapter 11 plan or otherwise forfeit its ability to do so. *See* ECF No. 29. Those two statutes and that time limit, however, pertain to situations where a creditor is required to do something in order to receive a distribution under the terms of a plan, and Leo does not point to anything in her plan that required the secured creditor to do anything to effectuate her surrender of the property. In fact, the plan is explicit that the secured creditor would continue to have claims against "the surrendered real estate" even after the confirmation of the plan and discharge of Leo's debt. Chapter 11 Plan at 22.

Finally, Leo argued at oral argument that notwithstanding her surrender of the property U.S. Bank Trust was required to send her a compliant notice under 14 M.R.S.A. § 6111 because she still retains the right of redemption under Maine law. This argument fails because in surrendering the property, Leo gave up her right of redemption. *Cf. Souza*, 2013 WL 3457185, at *2-3 (holding that a debtor was judicially estopped from challenging foreclosure based on the lender's failure to send a statutorily required notice of the right to cure because the debtor previously surrendered the property at issue during bankruptcy proceedings); *In re Montoya*, 95 B.R. 511, 513-14 (Bankr. S.D. Ohio 1988) (noting that a debtor who agreed to surrender her property during her bankruptcy proceedings surrendered her

8

"statutory right to redeem the property by payment of the amount of the judgment and costs prior to confirmation of the foreclosure sale").[7]

At bottom, because Leo surrendered the property in bankruptcy, she is judicially estopped from challenging the foreclosure process and her motion for judgment on the pleadings should be denied on that basis.

### III. U.S. Bank Trust's Motion to Appoint Receiver

U.S. Bank Trust moves for the appointment of Benjamin Campo Jr., Esq., as receiver pending resolution of this matter. *See* Receiver Motion.[8] In support of its motion, U.S. Bank Trust argues that notwithstanding her surrender and discharge during bankruptcy proceedings, Leo has continued to reap the benefits of the property by receiving $3,000 of monthly rental income from the current tenants while to date U.S. Bank Trust has paid out over $150,000 in taxes and insurance for the property and its legal fees and interest continue to accrue. *Id.* at 1, 6-7; ECF No. 9-1 at 1. It further contends that the appointment of a receiver would "allow for the collection of monthly rental payments to be allocated for payment of property taxes, insurance,

---

[7] I opted to address the merits of the arguments that Leo raised for the first time at oral argument, but I note that these arguments separately fail because they are waived. *See Guardado v. United States*, 76 F.4th 17, 23 n.4 (1st Cir. 2023) ("[E]xcept in extraordinary circumstances, arguments raised for the first time at oral argument are considered waived." (cleaned up)).

[8] I mistakenly granted U.S. Bank Trust's motion to appoint a receiver before Leo's response deadline had run. *See* ECF No. 10. I remedied that mistake by granting Leo's request to vacate my order granting the motion. *See* ECF No. 18. Additionally, the First Circuit has held that motions seeking the appointment of a receiver are dispositive in nature, so I can only make a recommended decision. *See ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48 (1st Cir. 2020).

[and] to make any necessary repairs" and would "ensure market rents are being charged."[9] Receiver Motion at 3.

Unsurprisingly, Leo opposes the appointment of a receiver. *See* Opposition to Receiver Motion (ECF No. 12). She argues that (1) the property is well maintained by the current tenants and is not in any imminent danger, (2) there is a danger that if a receiver raises the rent the current tenants might leave and no longer help maintain the property, (3) U.S. Bank Trust is unlikely to succeed in its efforts to foreclose, and (4) U.S. Bank Trust has an adequate legal remedy because it can recover adequate money through a foreclosure judgment and sale if it prevails in this action. *See id.* at 3-4.

The appointment of a receiver is an extraordinary remedy that requires a showing of an urgent need to protect property, but "the decision to appoint a receiver" ultimately "lies within the discretion of the court." *Consol. Rail Corp. v. Fore River Ry. Corp.*, 861 F.2d 322, 326 (1st Cir. 1988).[10] "Courts have recognized many factors that are relevant for a court to consider when determining the appropriateness of the appointment of a receiver. These include fraudulent conduct on the part of the defendant; imminent danger that the property will be lost or squandered; the inadequacy of available legal remedies; the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing

---

[9] U.S. Bank Trust also points out that the mortgage itself provides that the mortgagee "may do and pay for whatever is necessary to protect the value of the Property and [the mortgagee's] rights in the Property." Receiver Motion at 5 (quoting ECF No. 1-4 at 9).

[10] "The appointment of a receiver is procedural in nature and, therefore, federal law applies" in diversity actions. *U.S. Bank Nat'l Ass'n v. SRA Augusta SPE, LLC*, No. 1:16-cv-00410-JDL, 2016 WL 6808132, at *3 (D. Me. Nov. 17, 2016).

10

appointment; the plaintiff's probable success in the action and the possibility of irreparable injury to [its] interests in the property; and whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership." *Id.* at 326-27 (cleaned up).

Up first is whether Leo has engaged in fraud. Although U.S. Bank Trust argues that Leo is asserting a position in this litigation that is inconsistent with her position in her bankruptcy proceedings, it does not contend that her actions have risen to the level of fraud. Accordingly, this factor weighs against appointing a receiver.

Turning to the imminent danger of the property being lost or squandered and the possibility of U.S. Bank Trust's interest in the property being irreparably harmed, I accept Leo's position that the property is currently well maintained and not in immediate danger of falling into disrepair. *See* Opposition to Receiver Motion at 2-3. But Leo conveniently ignores other imminent threats to the property and U.S. Bank Trust's interest like tax liens or accidental damage that are only being forestalled because U.S. Bank Trust is paying the taxes and insurance in her stead. A receiver—unlike Leo—would use the rental income from the property to defray *all* the costs of maintaining and protecting the property's value during the pendency of this proceeding (which could go on for some time, particularly if there is an appeal). As such, these factors weigh in favor of appointing a receiver.

Next up is the inadequacy of available legal remedies. Leo argues that U.S. Bank Trust has failed to show this factor is at issue because it has brought this

foreclosure action and, if it obtains a foreclosure judgment, it will be made whole by the proceeds of selling the property. *See* Opposition to Receiver Motion at 3-4. Although U.S. Bank Trust fails to cogently show that the amount it claims to be owed is more than the value of the property, it does highlight that Leo has been discharged from personal liability, *see* Receiver Motion at 7, which would preclude a deficiency judgment against her. Leo's lack of personal liability, coupled with the long length of time since her default and the large amount of money that U.S. Bank Trust and its predecessors have advanced for taxes and insurance, convinces me that there is at least a possibility that U.S. Bank Trust will not be made whole by foreclosure and sale of the property. Thus, although it is a closer call, this factor also weighs in favor of appointing a receiver.

The next issue is whether the harm Leo might face if a receiver is appointed outweighs the harm U.S. Bank Trust might face is a receiver is not appointed. The only harm that Leo identifies in her opposition to U.S. Bank Trust's motion is that if a receiver is appointed and raises the rent, her current tenants—who help maintain the property—might be forced out and replaced with "less desirable tenants." Opposition to Receiver Motion at 3. Given that the whole point of appointing a receiver would be to ensure the property is well maintained and protected during the pendency of this case, I do not find that Leo's speculative worry about "less desirable tenants" outweighs the potential harms to U.S. Bank Trust outlined above. Accordingly, this factor weighs in favor of appointing a receiver.

That brings me to whether U.S. Bank Trust is likely to succeed in this case. If the Court agrees with my conclusion that Leo is judicially estopped from challenging U.S. Bank Trust's efforts to foreclose on the property, it is all but certain that U.S. Bank Trust will succeed in this case. Consequently, this factor weighs heavily in favor of appointing a receiver.

Finally, for the same reasons discussed above, I have no trouble concluding that U.S. Bank Trust's interests would be well served by the appointment of a receiver. That being the case, this last factor weighs in favor of appointing a receiver.

In summary, the balance of the factors weighs strongly in favor of appointing a receiver. Leo does not contest the competency of Attorney Campo to serve as a receiver nor does she challenge U.S. Bank Trust's proposed language delineating his authority as a receiver. I therefore recommend that the Court grant U.S. Bank Trust's motion to appoint Attorney Campo as a receiver.

### IV. U.S. Bank Trust's Motion to Hold Rent Proceeds in Escrow

U.S. Bank Trust filed a separate motion to hold the property's rent proceeds in escrow while the Court decided the above motions. *See* Escrow Motion (ECF No. 23). If the Court accepts my above recommendations, I recommend that the Court deny the motion as moot. To the extent that U.S. Bank Trust seeks direction on what Attorney Campo should do with the one month of rental income that he collected when I prematurely granted the motion to appoint him as receiver, *see* Escrow Motion Reply (ECF No. 25) at 1, I recommend that the Court direct him to use that money for the benefit of the property in accordance with his authority as receiver.

## V. Conclusion

For the foregoing reasons, I recommend that the Court **DENY** Leo's motion to for judgment on the pleadings (ECF No. 11). I further recommend that the Court **GRANT** U.S. Bank Trust's motion to appoint a receiver (ECF No. 9) and **APPOINT** Benjamin P. Campo, Jr., Esq., as receiver of the property for the purpose of maintaining the property to ensure its safe use by tenants for habitation; collecting monthly rental payments from the tenants to be allocated for expenses toward maintenance, property insurance, and property taxes; and the marketing and sale of the property to satisfy the mortgage lien upon approval by the Court. Finally, I recommend that the Court **DENY AS MOOT** U.S. Bank Trust's motion to hold rent proceeds in escrow (ECF No. 23) but **DIRECT** Attorney Campo to use the one month of rental income currently in his escrow account for the benefit of the property in accordance with his authority as receiver.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: November 14, 2024

/s/ Karen Frink Wolf  
United States Magistrate Judge

14